ORDERED.

**Dated: July 24, 2020**

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Roland Vance Askins, III,                         Case No. 8:18-bk-08833-RCT
                                                  Chapter 7
    Debtor.

Nancy J. Gargula,                                 Adv. Proc. No. 8:19-ap-00497-RCT

    United States Trustee for Region 21,

    Plaintiff,

vs.

Roland Vance Askins, III,

    Defendant.

**ORDER ON UNITED STATES TRUSTEE'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

    This adversary proceeding was commenced by the filing of a two-count complaint (the "Complaint")[1] by Nancy J. Gargula, United States Trustee for Region 21 (the "UST") against

---
[1] Doc. 1.

Roland Vance Askins, III, the debtor in the above-captioned Chapter 7 case and the defendant in this adversary proceeding (the "Debtor"). The UST seeks to deny Debtor a discharge in bankruptcy based on his alleged refusal to obey a lawful order of the Court and his failure to provide documents required to be produced.

Before the Court is the UST's Motion for Summary Judgment (the "Motion") on both counts of the Complaint.[2] Debtor did not file a response.[3] For the reasons set forth below, the UST's Motion is granted in part, and denied in part.

## BACKGROUND

### A. Procedural History

Debtor filed his Chapter 7 petition on October 15, 2018.[4] Ever since, the UST and Debtor have engaged in a tug-of-war over discovery.

The UST filed this Complaint on October 4, 2019. The Complaint has two counts. Count I seeks to deny Debtor a discharge based on his alleged refusal to obey a lawful order of the Court under 11 U.S.C. § 727(a)(6)(A). Count II seeks to deny Debtor a discharge based on his alleged unjustified acts or failures to act with respect to keeping and preserving recorded information under 11 U.S.C. § 727(a)(3).

In his answer to the Complaint (the "Answer"), Debtor admits to paragraphs 1 through 18 of the Complaint - all of the general allegations - and denies the rest.[5] Debtor also raises two affirmative defenses. For his first affirmative defense, Debtor states that he provided his amended 2018 tax return to the trustee after the UST filed her Complaint.[6] For his second

---

[2] Doc. 18.
[3] The UST served her Motion using the negative notice procedures of Local Rule 2002-4 as required by Local Rule 7001-1(k)(4).
[4] *See* 8:18-bk-8833-RCT (the "Main Case" or "MC") Doc. 1.
[5] Doc. 4.
[6] *Id.* ¶ 4.

2

affirmative defense, Debtor states that he produced all documents within his care, custody and control.[7]

## B. Factual Background

Debtor is an orthopedic doctor. He received income in 2017 and 2018 from Roland V. Askins III MD P.A. and Askins & Miller Orthopedics PA (collectively, the "Askins Entities").[8] The Askins Entities are medical practices.[9]

On February 6, 2019, the UST filed a Notice of Examination Directed to the Debtor Pursuant to Fed. R. Bankr. P. 2004 that attached a list of 19 categories of documents and information to be produced by Debtor and his "Affiliates" (the "2004 Notice").[10] The 2004 Notice defines "Affiliates" to mean Roland V. Askins III, MD P.A., Askins & Miller Orthopedics, P.A., Gulfcoast Orthopedic Center, P.A., Gulfcoast Surgery Center, Inc., and any entity affiliated with Debtor within the meaning of 11 U.S.C. § 101(2).[11]

On April 11, 2019, the UST filed a Consent Motion to Compel Compliance with Notice of 2004 Examination (the "First Consent Motion to Compel").[12] The Court granted the First Motion to Compel by Order entered April 12, 2019 noting in the preamble that Debtor "concedes that he has not provided any documents in response to categories 3, 5-12, 15, 17, and 18 of the document request attached to the [2004] Notice."[13] The Court ordered Debtor to provide a written response as well as documents responsive to the 2004 Notice by April 30, 2019.[14] The Court warned Debtor that "[f]ailure to timely comply with this order may be a

---

[7] *Id.* ¶ 5.
[8] Doc. 18-1 (Affidavit of Steven W. Pralle in Support of United States Trustee's Motion for Summary Judgment, sworn to January 28, 2020, (hereafter, the "Pralle Aff.")), ¶ 7.
[9] *Id.*
[10] MC Doc. 37.
[11] *Id.*, Section A ¶ 4.
[12] MC Doc. 55.
[13] MC Doc. 56.
[14] *Id.*

basis for the Court to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3), (5), and (6), or for such other relief."[15] Debtor responded to the 2004 Notice on April 26, 2019 as follows:[16]

| No. | Documents Requested in 2004 Notice | Debtor's Written Response |
|---|---|---|
| 1. | Statements for all Accounts upon which the Debtor has or had signatory or account access authority, or in which he has or had a direct, indirect or beneficial interest, covering the period of October 15, 2016 through the Present. | Attached hereto. |
| 2. | Statements for all Accounts of Affiliates, covering the period of October 15, 2016 through the Present. | Attached hereto. |
| 3. | Listing of all Accounts which were open at any time during the period of October 15, 2016 through the Present. | Attached hereto. |
| 4. | Applications and other opening documents for all Accounts, which were open for the period of October 15, 2016 through the Present, including all documents submitted to support such an application. | Attached hereto. |
| 5. | Check registers or cash disbursement journals for all Accounts covering the period of October 15, 2016 through the Present. | None. |
| 6. | Checks, cancelled checks, withdrawal slips, deposit slips, signature cards, and credit card and debit card authorizations for all Accounts covering the period of October 15, 2016 through the Present. | The Debtor requested these documents from the banks. On all accounts except for the Fifth Third account ending in 3423, he was told he was not on the accounts in such a way as to be allowed access to any documents. The Debtor has asked the person who has access to the account, Philip Askins, to request these documents. The Debtor requested the documents from the bank for the Fifth Third account and was told they had to contact their corporate office and would get back to him. Additionally, none of the accounts had any debit or credit cards except the Fifth Third |

---

[15] *Id.*
[16] MC Doc. 59.

| No. | Documents Requested in 2004 Notice | Debtor's Written Response |
|---|---|---|
|  |  | account, which had a Mastercard (ending in 2109).  The Debtor requested the credit card authorization for that credit card and was told that everything they have is recorded on the statements. The Statements have been provided. |
| 7. | General ledger reports for Affiliates covering the period of October 15, 2016 through the Present.  To the extent possible, this information should be provided in an electronic format readable by Excel. | Requested documents are being generated by Jamie Clark of Accounting Associates in Bradenton and will be provided upon receipt of same. |
| 8. | Financial reports including a balance sheet, income statement and cash flow statement (if available) for Affiliates covering the years ending December 31, 2016; December 31, 2017; and December 31, 2018. | Requested documents are being generated by Jamie Clark of Accounting Associates in Bradenton and will be provided upon receipt of same. |
| 9. | All financial affidavits executed by the Debtor in connection with his marital settlement agreement and any proposed adjustments to his marital settlement agreement. | Attached hereto. |
| 10. | All communications between the Debtor and Patricia Christine Askins covering the period of October 15, 2016 through the Present. This should include all communications by counsel on their behalf. | All communications between the debtor and Patricia Christine Askins covering the period of October 15, 2016 through the present in Debtor's possession attached hereto which are in Debtor's possession attached hereto.  The Debtor searched his phone and discovered that all older text messages from everyone "dropped off." The Debtor requested all communications by counsel on their behalf from his attorney and was told they would have to be subpoenaed by the Trustee. |
| 11. | Practice Management and billing reports that reflect all charges, adjustments, insurance and account payments attributable to the debtor's individual professional services at the Affiliates covering the period of October 15, 2016 through the Present. | Requested documents are being generated by Jamie Clark of Accounting Associates in Bradenton and will be provided upon receipt of same. |

| No. | Documents Requested in 2004 Notice | Debtor's Written Response |
|---|---|---|
| 12. | Transcripts of any depositions of the Debtor during the period of October 15, 2016 through the Present. | None. |
| 13. | Credit reports for the Debtor and Affiliates covering the period of October 15, 2016 through the Present. | None. |
| 14. | Tax returns for the Debtor and Affiliates for 2016, 2017, and 2018, including all pages, exhibits, and schedules as filed with the Internal Revenue Service. | Tax returns for 2014, 2015, and 2016 attached hereto. However, more tax returns are being amended by Jamie Clark of Accounting Associates in Brandenton. Those amended returns, along with the 2017 tax return will be provided upon Debtor's receipt of same. |
| 15. | Any reconciliation analysis prepared by the Debtor's accountants or professionals, including Jamie Clark. | None. |
| 16. | All agreements with Broadstone Net Lease, Inc. | Attached hereto. |
| 17. | Responses to creditors provided in aid of execution during the period of October 15, 2016 through the Present. | None. |
| 18. | Trust documents covering the period of October 15, 2008 through the present for any trusts where in the Debtor was either a trustee or a beneficiary. | None of which Debtor is aware. |
| 19. | All documents requested before the Present by the Chapter 7 Trustee by Larry S. Hyman. | All documents provided to Chapter 7 Trustee attached hereto. |

On July 29, 2019, the UST filed a Second Consent Motion to Compel Compliance With Notice of 2004 Examination (the "Second Consent Motion to Compel").[17] The Court granted the Second Consent Motion to Compel by Order entered July 30, 2019 noting in the preamble that "Debtor concedes that he has not provided any documents in response to categories 5-8, 11-13, 15, 17, and 18 of the document request attached to the [2004] Notice and that the representations in the second motion are accurate."[18] Debtor represented in the Second Consent

---

[17] MC Doc. 69.
[18] MC Doc. 72.

Motion to Compel that he "has been advised that all of the above documents will be available by August 30, 2019."[19] The Order was amended August 8, 2019 to correct a misstated date (the "August 8 Order").[20] The August 8 Order directed Debtor to produce by August 30, 2019:

   a.  Checks, cancelled checks, withdrawal slips, deposit slips, signature cards, and credit card and debit card authorizations for all accounts of the Debtor and his affiliates; [2004 Notice document request no. 6]

   b.  general ledger reports for any of the Debtor's affiliates; [2004 Notice document request no. 7]

   c.  financial reports, including a balance sheet, income statement and cash flow statement, for any of the Debtor's affiliates; [2004 Notice document request no. 8]

   d.  practice management and billing reports for the Debtor's affiliates; [2004 Notice document request no. 11] and

   e.  IRS tax returns for 2017 and 2018, along with amendments of previously filed returns.[21] [2004 Notice document request no. 14]

The August 8 Order further states that "[if] the Debtor fails to timely comply with this order, the Debtor consents to the denial of discharge and will file a written waiver of his discharge under 11 U.S.C. § 727(a)(10)."[22]

On October 4, 2019, the UST filed the Complaint. Therein the UST states that "[o]n August 30, 2019, the [Debtor] produced tax returns for 2016 and 2017" but that "he produced no other new documents required by the August 8 Order."[23] The UST advised Debtor of his noncompliance with the August 8 Order on September 4, 2019 and sent him a draft Waiver of Discharge.[24] Debtor did not return a signed waiver of discharge.[25]

---

[19] MC Doc. 69 ¶ 6.
[20] MC Doc. 77.
[21] *Id.*
[22] *Id.*
[23] Doc. 1 ¶ 15.
[24] *Id.* ¶ 16.
[25] *Id.* ¶ 18.

7

The UST contends that based on these facts, and in particular Debtor's refusal to obey the August 8 Order and failure to produce documents, Debtor is not entitled to a bankruptcy discharge under 11 U.S.C. § 727(a)(3) and (6)(A).

## **DISCUSSION**

### A. **Summary Judgment Standard**

Although Debtor did not respond to the UST's Motion, a court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."[26] At a minimum, the court must review all of the evidentiary materials submitted in support of the motion to determine whether they establish the absence of a genuine issue of material fact.[27]

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[28] The initial burden is on the moving party to inform the court "of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[29] The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party.[30] "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."[31]

---

[26] *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted).
[27] *Id.* at 1101-02 (citation omitted).
[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[29] *Id.* at 323.
[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[31] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Objection to Discharge Under 11 U.S.C. § 727

"In an objection to discharge proceeding, the burden is on the plaintiff to demonstrate by a preponderance of the evidence that the debtor has violated one of the subsections of Section 727(a) of the Bankruptcy Code. Once the plaintiff meets this burden by producing evidence sufficient to support the objection, the burden shifts to the defendant to satisfactorily explain the transaction or omission. In order to fulfill the primary purpose of the Bankruptcy Code of providing debtors with a 'fresh start,' objections to discharge under Section 727 are construed strictly against plaintiff and liberally in favor of debtor."[32]

#### 1. 11 U.S.C. § 727(a)(6)(A)

Section 727(a)(6)(A) provides:

(a) The court shall grant the debtor a discharge, unless—
...
   (6) the debtor has refused, in the case—
     (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;[33]

"Denial of a discharge for refusal to obey a court order must be a result of 'wilful, intentional disobedience or dereliction' and not merely inadvertence or mistake."[34] "Mere 'failure' to obey a court order is insufficient under Section 727(a)(6)(A). The plain language of the statute requires that the debtor *refuse* to obey a court order."[35]

Here, the UST contends that Debtor refused to obey the August 8 Order. The August 8 Order directed Debtor to furnish specified documents to the UST. The August 8 Order also required Debtor to file a written waiver of discharge if he failed to comply. It is undisputed that Debtor failed to produce all of the documents required by the August 8 Order. It is also

---

[32] *In re Costantini*, 201 B.R. 312, 315 (Bankr.M.D.Fla.1986) (citations omitted).
[33] 11 U.S.C. § 727(a)(6)(A).
[34] *In re Costantini*, 201 B.R. at 315-16 (citation omitted).
[35] *Id. at* 316 (citation omitted) (emphasis in original).

9

undisputed that Debtor failed to provide or file a waiver of discharge. But mere "failure" to obey a court order is not enough under § 727(a)(6)(A).[36] The issue is whether Debtor "refused" to obey the August 8 Order. The UST does not address Debtor's intent.[37] The Motion does not "foreclose[] the possibility of the existence of certain facts from which 'it would be open to a jury . . . to infer from the circumstances' that Debtor's non-production was simply the result of his "failure.""[38] While the UST has demonstrated that Debtor failed to comply with the August 8 Order, more must be done to demonstrate that Debtor refused to comply. It was not, and the Court therefore declines relief under § 727(a)(6)(A).

### 2. **11 U.S.C. § 727(a)(3)**

Section 727(a)(3) provides that a debtor who "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case" may be denied a discharge.[39] The purpose of the statute is to ensure that creditors and the trustee are given enough information to understand the debtor's financial condition.[40] A full accounting of every business transaction is not required, "but there should be some orderly records from which the debtor's present and past financial condition can be ascertained with substantial completeness and accuracy."[41] Each case is decided on its own facts, although a debtor who is involved in business may be held to a higher standard than a debtor who is an

---

[36] *Id.*
[37] *See Nickless v. Lipp (In re Lipp)*, Case No. 07-43490-HJB, Adv. No. 08-4056, 2009 WL 2032127, at *5 (Bankr. D. Mass. July 6, 2009).
[38] *Anderson,* 477 U.S. at 249 (citation omitted).
[39] 11 U.S.C. § 727(a)(3).
[40] *Forbes v. Moore (In re Moore)*, 559 B.R. 243, 254 (Bankr. M.D. Fla. 2016) (citation omitted).
[41] *Id*. (citation omitted).

unsophisticated wage earner.[42] In sum, "a debtor is required to 'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'"[43]

Once the objecting party demonstrates that the debtor's records are insufficient, the burden shifts to the debtor who must show that "such act or failure was justified under all of the circumstances of the case."[44] And in doing so "[a] debtor must explain his lack of financial documentation in such a manner to convince the court of good faith and businesslike conduct."[45]

The UST acknowledges that Debtor provided tax returns for 2017 and 2018 for himself and the Askins Entities.[46] The UST's bankruptcy auditor, Steven W. Pralle, contends that in order to prepare complete and accurate tax returns and make proper requests for reimbursement from insurance companies and Medicare, a medical practice would reasonably be expected to produce and retain the following categories of records: checks, cancelled checks, withdrawal slips, and deposit slips for their accounts, general ledger reports, financial reports, including a balance sheet, income statement and cash flow statement, and practice management and billing reports.[47] According to Mr. Pralle, in order to ascertain Debtor's financial condition and business transactions, "it is critical to be able to review [these] categories of records for the Askins Entities."[48]

Debtor is a physician and involved in a number of businesses. He is sophisticated with respect to record keeping and financial matters. It is undisputed that Debtor kept records related

---

[42] *Id.* (citation omitted).
[43] *Id.* (citation omitted).
[44] *Id.* at 254-55 (citation omitted).
[45] *Id.* at 255 (citation omitted).
[46] Pralle Aff. ¶ 8.
[47] *Id.* ¶ 9.
[48] *Id.* ¶ 12.

to his own financial affairs as well as those of the Askins Entities. Indeed, in the Second Consent Motion to Compel, Debtor represented to the UST that documents responsive to the 2004 Notice, items 6, 7, 8, 11 and 14, allegedly in the possession of third-parties, "will be available by August 30, 2019." But there is no evidence in the record that Debtor took any action to obtain the documents. Accordingly, there are no records before the Court from which Debtor's and the Askins Entities' financial condition and material business transactions can be determined.[49] The Court finds that the UST has met her burden to show that Debtor has not maintained adequate books and records.

Debtor, having failed to respond to the UST's Motion, has offered *no* justification for his failure to produce documents pursuant to the August 8 Order.

Based on the circumstances of the case, Debtor's failure to produce his personal and business financial records was not justified. Accordingly, Debtor's discharge is due to be denied pursuant to § 727(a)(3).

Accordingly, it is

**ORDERED:**

1. The UST's Motion for Summary Judgment as to Count I of the Complaint (denial of discharge pursuant to 11 U.S.C. § 727(a)(6)(A)) is **DENIED**.

2. The UST's Motion for Summary Judgment as to Count II of the Complaint (denial of discharge pursuant to 11 U.S.C. § 727(a)(3)) is **GRANTED**.

Clerk's office to serve.

---

[49] *See In re Moore*, 559 B.R. at 256.